Good afternoon. Next case on the docket is 5-23-0488. People v. Hale. Appellant, if you are ready, you may proceed and please identify yourself for the record. Your Honors, and may it please the Court, my name is Walter Paul from the Office of the State Appellate Defender. I am the attorney for Shannon Hale, the appellant. In this case, we seek reversal of Shannon's convictions for unlawful methamphetamine possession and unlawful methamphetamine delivery where the trial court committed reversible error by barring any mention of the LC's sexual assault allegation against Shannon during his jury trial. This error was not harmless. It prevented Shannon from fully articulating his defense and thereby violated his Sixth Amendment right to present a complete defense. From the outset of this case, the trial court enforced a total ban on the sexual assault allegation. Just as a refresher, this case commenced when LC called police on October 25th of 2022 and alleged that Shannon gave her methamphetamine and sexually assaulted her. After an investigation, the State charged Shannon with methamphetamine possession and delivery, but it dismissed the sexual assault charge. The State then filed a motion in limine to erase all mentions of the charge from body-worn cameras, interview recordings, and pre-trial transcripts. The problem was that Shannon told the trial judge that he wanted to discuss the allegation because it was a necessary element of his defense theory. However, the judge allowed the redactions and went even further to state that the parties could not even speak of the sexual assault allegation. Of course, Shannon objected multiple times throughout his entire case to the court's order. At the motion in limine hearing, Shannon stated that he objected wholeheartedly because the evidence was necessary to tell his entire story, but the trial court maintained the total ban. During opening statements in three separate sidebars, Shannon reiterated that mentioning the sexual assault allegation and the fact that LC said it to begin with was necessary to fully articulating his defense narrative. The State even agreed at this point that the court should allow the evidence in. Instead, the court maintained the total ban. Before witnesses were called, the State held sua sponte a sidebar where it reiterated its order and told the parties that the sexual assault allegation should not be spoken of at all. Again, Shannon reiterated that the allegation was relevant to his defense theory, but the trial court maintained the total ban. Thus, throughout this entire case, even though Shannon insisted that the sexual assault allegation was relevant and inextricably intertwined with his defense theory, the trial court kept out the evidence. But the trial court was wrong that keeping out the evidence was in Shannon's best interest. Although the dismissed sexual assault allegation constituted other crimes evidence, and there was a risk of prejudice, there were two significant, independent, and proper reasons to admit the evidence. First, the allegation was admissible to show LC's motive to retaliate against Shannon for giving her fake methamphetamine, or MSM. During trial, the forensic scientists testified that MSM was a nutritional supplement that looked like methamphetamine. Shannon's defense theory provided that he gave MSM to LC, not real methamphetamine, and then she called police in retaliation. He called witnesses who testified that they have seen Shannon give fake methamphetamine to other people in the past, and or they have heard of the general practice from other people. Specifically, Jamie Hudgins testified that people usually were unhappy when they received fake methamphetamine, and they resorted to things such as stealing, spreading rumors, or calling police to report false crimes. Thus, Shannon's theory was not far-fetched, but was supported by his witnesses and the record. Yet, he was not allowed to fully articulate this theory and this defense narrative because the trial court totally banned the sexual assault allegation. This order was pointless, especially when LC testified during the cross-examination that Shannon sexually assaulted her. The state, Shannon, and the court were all thrown away or caught off guard by the testimony because it was in front of the jury. However, the court allowed LC to finish her entire testimony until much later, instructing the jury that they should not regard her sexual assault testimony. However, it is reasonable to assume that this testimony rested in the jury's mind. However, Shannon was not able to address the allegation. Instead, the jury sent a note during their deliberation and at the end of trial, asking the court what the other complaint in this case was. That was indication that the court's order left a gap in the evidence that the jury had to ask about, and thus there is the potential that the verdict was ill-informed in this case. Shannon's lips were lopped, and his case was disadvantaged. The evidence was also admissible to help Shannon explain that he falsely confessed to the meth and feminine charges in order to avoid the sexual assault allegation. Of course, confessions are powerful evidence, and the LA Supreme Court provides that even if the court finds them admissible, the defendant should still have an opportunity to discredit or challenge the veracity of those confessions. That did not take place in this case. So overall, the trial court should have admitted the sexual assault allegation for the proper purposes of first, showing Elsie's motive to lie, and second, to allow Shannon to address the veracity of his confessions. Of course, Shannon understood that this constituted other crimes evidence, and he acknowledged that there was risk associated with presenting the sexual assault allegation. But it is important to remember that Shannon did not want to admit this evidence for the truth of the matter asserted within, but rather to show that an accusation was made to begin with, not to show that it actually occurred. Other crimes evidence is routinely admitted for such proper purposes with limiting instructions. The difference here is that the court did not consider a limiting instruction. Instead, the court repeatedly instructed the parties not to mention the sexual assault allegation, despite the fact that Shannon insisted that it was relevant to his theory and was imperative for him to include in his defense narrative. The trial court's total ban was not harmless. The verdict in this case turned on Elsie's credibility. She presented the sole account of what occurred between her and Shannon that night, and this case involved a small amount of methamphetamine and potentially false claims. That Elsie was the only one that could speak to the sexual assault allegation, and the fact that her credibility was an important factor, elevates why the court should have allowed the sexual assault allegation. Instead, by prohibiting Shannon from discussing the sexual assault charge, the trial court prevented the jury from considering the complete and undeniably accurate context of Elsie's story based on Shannon's defense theory. This resulted in a verdict by the jury that was deprived of admissible and profoundly relevant evidence. The state emphasizes the fact that Shannon was a pro se client in this case, but there is no legal basis for a trial court to rule on the admissibility of evidence differently based on a defendant's pro se status. As we tell pro se defendants all the time, every defendant enjoys the right to present a complete defense, regardless of their pro se status. Thus, especially here, where the evidence at issue went to the court of Shannon's defense, it would be extremely inappropriate to consider his pro se status as a basis to exclude evidence. Finally, the court has forfeited the procedural points in this case, including that this court may review this issue for the constitutional exception to forfeiture, or under the fair trial problem of plain error. Thus, we ask that this court reverse Shannon's convictions for unlawful methamphetamine possession and delivery, and remand her a new trial. Thank you. Are there any questions? Not at this time. Chelsea said that they used methamphetamine, snorted it, or somehow used the methamphetamine in her own background. And the police tested residue, and that tested positive for methamphetamine. Isn't that right? Yeah, the police... That was not by the face end of the defendant's theory that he gave fake methamphetamine, and that's why she was mad and made a false complaint? Correct, Your Honor. Although those facts may be there, we believe that Shannon still deserved the right to tell his story of what happened that night, including mentioning the sexual assault allegation. Although those facts are established, we believe that the trial in general, or the verdict itself, is weakened by the fact that not all the evidence was considered in this case. Thank you. All right, thank you, Chelsea. You'll be given time for a vote. Appellee, please identify yourself for the record, and you may proceed. May it please the court, counsel. My name is Max Miller, and I represent the people of the state of Illinois. This singular issue in this case regards the trial court's granting of the state's second motion in limine, which, as appellants pointed out, limited the evidentiary transcripts to specific pages and lines without references to the criminal sexual assault charge that was initially charged and then dropped. The decision to grant or deny a motion in limine rests within the sound discretion of the trial court, and that decision will not be disturbed absent an abuse of discretion. Now, abuse of discretion, as this Court is aware, is found only where the trial court's decision is arbitrary, fanciful, unreasonable, or where no reasonable person would agree with the position adopted by the trial court. Defendant's argument challenges the trial court's determination made following that motion to preclude these crimes. The unique progression of this case can be attributed to defendant exercising his right to proceed pro se, but the state wasn't making any sort of legal distinction, as if that was just trying to explain the factual context of this and the subsequent consequences of that decision. Although not allowed to challenge the veracity or the bias or prejudice of a witness or their motive to fabricate a story, why is this evidence not admissible by the defendant to show the accuser has fabricated a story? Why is that not admissible? For a couple reasons, Your Honor. Because the trial court decided that the evidence was not only prejudicial to the defendant, but also irrelevant. So initially, although other crimes' evidence can be admissible, such evidence should not be admitted if the prejudicial effect of the evidence substantially outweighs its probative value. Now, in this very particular case, made so unique by the circumstance of defendant's own representation, which is detailed at great lengths in the exchanges and the briefs, the trial court and the state worked to preserve the defendant's right, but also to preserve the judicial process, that the trial court is, in fact, the gatekeeper of the evidence. That right isn't handed over to the defendant just because he's pro se. The introduction of CISNA, or Ellie's allegation of criminal sexual assault, was extraordinarily prejudicial because of the strength of the case against the defendant. This case not only had numerous admissions of defendant regarding the methamphetamine possession and delivery, but the challenge to the state's case, this alleged credibility contest between CISNA and the defendant, from the defendant's point of view of two methamphetamine users, alleged characters of deception, but this weighs heavily against the defendant from the start because his initial police report substantiates the same narrative that CISNA gives. There's no disagreement in the facts. The defendant's admissions heard by the jury through video evidence were not a counter to CISNA's testimony, some counterbalance. They were in support of it. Defendant didn't dispute methamphetamine was collected, that it was from the residence, that it was in a drug house he resided in, in a room he used for drugs. He admitted to using methamphetamine in the same manner as the state would describe. He only said that it was fake methamphetamine. Now, defendant asked this court to hold that the trial court deprived him of an opportunity to present this defense. The overarching story he decided by trial that he wanted to say was that the criminal sexual assault charge was evidence of a vindictive CISNA who had been given fake methamphetamine, but as this court will note from defendant's opening statements, closing arguments, and many, many statements made throughout the trial, defendant absolutely was given that opportunity. Beginning with opening statements, defendant claimed that he was an opportunist who had MSN. He explained that there was some girl in the back room who he gave him the MSN before his encounter with CISNA. He told the jury that CISNA decided to offer her body to him in exchange for the MSN, which he claimed that she was fooled into believing was meth. Defendant argued that the circumstances of CISNA's arrival was suspicious. He told the jury that CISNA snorted the MSN and immediately, realizing it to be fake, proceeded to call the police. But instead of telling the police about the fake drugs, defendant alluded that she told them, quote, a serious charge that I did something bogus to her. Now, defendant's working theory was that it was easier for him to say that than to admit that he gave her fake methamphetamine when he made the report to the police. Now, at this point, it appears that what defendant's contention was, was that it would have strengthened his argument in that outburst instead of saying serious charge to have added that it was specifically a criminal sexual assault. And the prejudice of this cannot be overstated. The credibility contest between CISNA and defendant still took place before the jury. The evidence simply weighted entirely in favor of CISNA. If the defendant just additionally injected into this trial the criminal sexual assault charge, that does nothing to change the credibility determination that was still before the jury. The jury credited defendant's admissions to the police, who in his own words substantiated the same testimony that CISNA gave. The suggestion that introducing the criminal sexual assault allegation would somehow provide the jury with a vague means of finding defendant's deceitful nature more credible is highly dubious. And it's not only the State's witnesses and evidence that gutted the credibility of defendant's claim he lied about possessing the methamphetamine. It's the request he made of the jury. Defendant proceeded to present a litany of witnesses who almost all testified the exact same thing. It's well within the defendant's character to give someone MSM in place of methamphetamine. And the State would just like to point out this is an odd manner of convincing the jury of the veracity of his narrative. Essentially, he asked the jury to believe he's a con artist by reputation, but they should believe in his own words that he gave the police were a false confession, even though in his closing he'll live on to say, I don't really believe false confessions are a common thing, but in this case they do exist. Defendant explains why he gave this supposed false confession. He says it was easier for him to say that he gave her methamphetamine than to explain this ruse with the MSM and provide both detail and explanation of how he received the fake methamphetamine. He explained that he felt kind of guilty about failing to deliver through on his promise to Cisna and he didn't want to add fake methamphetamine to the list. And he also references perhaps some misbelief that he would have been charged with obstruction of justice for telling police the truth. This is the defense that defendant now claims on appeal he was denied the opportunity of presenting. All the defendant would accomplish with the addition of discussing a criminal sexual assault allegation is to call the jury's attention away from the actual charged offenses in this case, delivery, possession of methamphetamine. The trial court merely exercises discretion in preventing defendant from prejudicing himself further than he already had with his own admissions. However, this was always the theory of defendant's case. This was the theory he presented to the jury. The suggestion that the details of the charge would somehow benefit defendant contradict the determinations that already took place and wouldn't have done anything to impact those made by the fact finder. Now, while defendant did maintain the prejudice was something he was willing to assume, it's important to remember that defendant was representing himself and by his words and actions demonstrated that he underestimated the case against him. The trial court further maintained the responsibility of ensuring that defendant was tried not on the drop charge of criminal sexual assault, but on the actual charges of possession and delivery of methamphetamine. As the trial court stated, it was on the narrow issues of whether defendant was guilty of those two offenses. The trial court went so far as to say, I really think it's irrelevant, the criminal sexual assault at this point. The trial court had said it did not want any evidence of that. It is not relevant to the issue of whether you possessed or delivered methamphetamine. Now, the court's duty in any given case is to ensure that only proper evidence is presented to the jury. This should not mean any party, for whatever reason, should be permitted to introduce evidence merely because it's important to their theory of a case. The court bears considerable responsibility to ensure that a trial is conducted in an orderly manner and that such that the jury will not be confused or distracted. That's people versus Smith. The court has a responsibility to control the presentation of evidence in a manner that minimizes juror confusion and promotes judicial economy. Now, here the court considered the state's argument that it would be unduly prejudicial for the jury to hear the evidence. Even if defendant could credibly maintain that the evidence was relevant to his defense, the court was nonetheless obligated to consider the admissibility of such evidence under Supreme Court Rule 403. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. It does not require extensive analysis to understand that what this defendant sought and would like what this court trial would have likely became was an exploration of the credibility of Cissna's claim of sexual assault, which she had already blurted out during the trial, prompting defendant's extemporaneous denials of the accusation. The court recognized that this trial was about drug possession and delivery and pursuant to its gatekeeping role under Rule 403, its discretion in so limiting any references to the criminal sexual assault allegation was to prevent the jury from being confused and the defendant from being unduly prejudiced. The state points out that this is very similar to one of this court's prior holdings in People v. Slack. Defendant makes the same sort of contention that evidence shouldn't have been barred. He asked for de novo review. This court held that this is an abuse of discretion and that it is well within the trial court to decide which evidence is admissible and what is not. However, this court considered even for argument's sake whether or not that error was harmless. Here the state's contention is that defendant was not deprived of any defense. He gave this defense. He wasn't able to use the words criminal sexual assault, which got out anyway in the trial, but this is the theory he presented in opening. He presented it throughout the trial. He presented it in closing. He made this argument. The jury still made its determination about credibility between these two. And with that, we respectfully rely on the brief and request that this court affirm. Any questions, Justice Cooley? Nope. Justice Kahn? Thank you, Your Honor. Rebuttal? Just a few points, Your Honors. When the trial court considers evidence, it must determine whether the probative value of that evidence would be outweighed by the risk of undue prejudice. The state is correct that the trial court considered the prejudicial effect of the sexual assault allegation. The problem in this case is that the court did not give due weight to Shannon's insistence that the probative value of the sexual assault allegation was important in this case. Specifically, the defense narrative that Shannon intended to tell during trial was that that night on October 25th of 2022, L.C. made a lie to the police that he gave her methamphetamine and that he sexually assaulted her. The state's charges allege that both of those events, the methamphetamine possession and delivery, and the sexual assault occurred on the exact same night around the same time. And thus, when the court totally banned the sexual assault allegation, Shannon found it very difficult to tell his defense narrative without including the sexual assault allegation. This allegation did not occur months or years before that night, but on that exact night. And so, throughout trial, the state emphasized that Shannon had opportunities to present these theories, except Shannon did not present his theory. He did not present his complete theory, but rather he presented a theory that complied with the trial court's total ban. But the trial court's total ban was erroneous, because Shannon had a right to present evidence that had probative value and that was relevant to his defense. That did not occur in this case. And that error by the trial court was not harmless, because L.C.'s credibility and her story was very important, especially considering Shannon did not testify in this case. She was the only one there that night and the only one that observed the events, yet she was the only one who was able to tell the story. On top of that, L.C. was the only one during this case who mentioned the sexual assault allegation. It was a surprise during her testimony, and it surprised the prosecutor, Shannon, and the trial court. At the end of this trial, Shannon was not able to mention it, but L.C. was. And yet the jury sent a note to the court asking what the other complaint was. And so there is error in this case, but there's also a harm in that Shannon was not able to address evidence that the jury may have considered and that L.C. was able to consider. And we believe that that harm should be corrected by this court in the form of a reversal of Shannon's convictions and a remand to a new trial. Any final questions? No. No other questions. Thank you. All right. Thank you, counsel, very much for your arguments. We will take this matter under advisement and issue a ruling in due course. Before we adjourn, I would invite anyone who's, this is their first visit to this courthouse. If it is, there's a lot of history here. We invite you to stick around and look around if you would like to do so. Abraham Lincoln argued a case in this very room. And second, the court would like to at this time acknowledge our bailiff, Larry Hancock, who is retiring after 22 years of service to this court. He has served with distinction and excellence. And on behalf of the grateful court, I want to personally thank you, sir, and we wish you the best of luck. With that, we are adjourned until 9 a.m. tomorrow morning.